**CHIAPHUA COMPONENTS LIMITED, Plaintiff,**

v.

**The WEST BEND COMPANY, Defendant.**

No. 2:00CV85.

United States District Court, E.D. Virginia, Norfolk Division.

April 27, 2000.

William Edgar Spivey, Martha Windley Hofler Walden, Kaufman & Canoles, Norfolk, VA, for Plaintiff.

Linda S. Laibstain, Jeffrey Lance Stredler, Hofheimer Nusbaum, P.C., Norfolk, VA, L. William Staudenmaier, Cook & Franke, SC, Milwaukee, WI, for Defendant.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss for want of personal jurisdiction of the Court pursuant to the Federal Rules of Civil Procedure. The parties, with leave of the Court, have engaged in extensive briefing and counter-briefing. Oral arguments were heard by the Court on April 26, 2000. In light of the briefing and oral argument offered, the Court finds this matter ripe for judicial determination. The Defendant's Motion is **GRANTED.** Plaintiff's requests for transfer and for discovery are **DENIED.**

### I. Factual & Procedural Background

The Plaintiff, Chiaphua Components Limited, is a Chinese component manufacturer proceeding under the Declaratory Judgment Act. The Plaintiff is a Hong Kong company, which produced motors for the Defendant in China that subsequently were imported to Wisconsin where they were incorporated into final products.

The Defendant, The West Bend Company, manufacturers a variety of cookware and water distillers. It is a Delaware corporation, with manufacturing facilities in Wisconsin and Mexico. The Defendant currently has no registered agent in Virginia, but did have one up until 1999.

The Defendant believes that the Plaintiff's motors, used within the Defendant's water distillers, caused a series of fires that ultimately led to the Defendant undertaking a national recall of the water distillers (model 10120). The Defendant purportedly intends to seek payments in the manner of indemnification/contribution from the Plaintiff for the costs incurred as a result of the recall notice. The Plaintiff disputes its liability for the recall and asserts this Declaratory Judgment action to prove the same.

Defendant has advised the Court of ongoing litigation between these parties and/or their subsidiaries in the United States District Court for the Eastern District of Wisconsin, case no. 98–C–0567, regarding fires caused by popcorn poppers manufactured by the present Plaintiff and sold under the West Bend label. *See* Stacy C. Gerber Ward Affidavit (Mar. 22, 2000). There too, West Bend claims indemnification from Chiaphua Components Limited.

## II. Legal Standards

This action is brought by the Plaintiff under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201. The act provides in relevant part that:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

*Id.*

The determination of whether personal jurisdiction exists lies with the Court. The burden is on the Plaintiff to prove by a preponderance of the evidence that sufficient grounds for jurisdiction exist. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). If the existence of jurisdiction depends on the resolution of disputed factual questions, the Court may resolve the issues at a separate evidentiary hearing, or may defer ruling pending the receipt of evidence at trial. *See id.* In considering this motion, the Court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

Personal jurisdiction can be either general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). If a defendant's activities within the forum state are substantial and pervasive, the Court may exercise general jurisdiction over the defendant. *See id.* at 415–16, 104 S.Ct. 1868. On the other hand, if the contacts with the forum are rare or limited but relate directly to the cause of action, then the Court's specific jurisdiction can be used to subject a defendant to suit as to that cause of action. *See id.* at 414, 104 S.Ct. 1868. If a nonresident defendant engages in some purposeful activity in the forum state, even a single act may constitute sufficient contact for a court to exercise personal jurisdiction. *See, e.g., Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1046 (4th Cir.1988). In the case at bar, the Plaintiff asserts both general and personal jurisdiction.

### A. Specific Personal Jurisdiction

The Virginia long-arm statute is designed to assert jurisdiction to the extent permitted by the due process clause over

those parties who "engage in some purposeful activity in Virginia." *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*, 218 Va. 533, 534, 238 S.E.2d 800 (1977) (per curiam). The Virginia long-arm statute provides that:

A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or things in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

\*\*\*

B. Using a computer or computer network located in the Commonwealth shall constitute an act in the Commonwealth. For purposes of this subsection, "use" and "computer network" shall have the same meanings as those contained in § 18.2–152.2.

*Id.*[1]

The suit arises under diversity jurisdiction, calling for the application of the Virginia statutory long-arm scheme in compliance with Constitutional demands of due process towards the parties. Determination of whether personal jurisdiction exists is a two step analysis of: (1) whether the particular facts and circumstances of the case fall within the statutory language and (2) whether assertion of jurisdiction comports with the Due Process Clause of the Constitution. *See Ellicott Mach. Corp. v.*

*John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir.1993).

The statutory language of the Virginia long-arm statute encompasses singular acts. *See Danville Plywood Corp.*, 218 Va. at 534, 238 S.E.2d 800 ("[A] single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon our courts."). The Virginia Supreme Court also instructs that § 8.01–328.1 is to be read as encompassing the fullest extent permitted under the Due Process Clause. *See Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319, 512 S.E.2d 560 (1999) (quoting *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664 (1971)). Nevertheless, in order to exercise specific personal jurisdiction, the requirements of the Virginia long-arm statute must be satisfied, even if the exercise of jurisdiction would otherwise be consistent with due process. *See, e.g., Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir.1985); *DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 423 (E.D.Va. 1996).

In order to subject a nonresident defendant to personal jurisdiction, the Due Process Clause of the United States Constitution requires that a defendant have certain "minimum contacts" with the forum state such that "the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). Minimum contacts exist when the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In order for a court's jurisdiction to be

---

1. Plaintiff makes no assertion and offers no evidence of jurisdiction under Va.Code. § 8.01–328.1(B). Mindful that the Plaintiff has the burden of establishing this Court's jurisdiction, the Court finds no basis to invoke section B.

proper, "it is essential ... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 534, 238 S.E.2d 800 (1977) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

## B. General Personal Jurisdiction

Both the Virginia Supreme Court and this Court recognize the independent capacity of courts sitting in Virginia to assert general personal jurisdiction upon a party. *See Coastal Video Communications*, 59 F.Supp.2d at 569; *Witt v. Reynolds Metals Corp.*, 240 Va. 452, 397 S.E.2d 873 (1990). The Virginia Supreme Court held in *Witt* that the exercise of *in personam* jurisdiction over a corporation which regularly did business in Virginia was warranted even though the cause of action arose out of events unrelated to corporation's in-state business. *See Witt*, 240 Va. at 455–56, 397 S.E.2d 873. The exercise of general personal jurisdiction remains bounded by requirements of Constitutional due process, typified by notions of fair play. *Id.* at 454, 397 S.E.2d 873. "Subjecting a non-resident defendant to the binding judgments of the forum court must "not offend traditional notions of fair play and substantial justice." *Id.* (citation omitted). "[T]he contacts of the defendant with [Virginia] must be such as to make it reasonable to require a defense in the forum state." *Id.* The United States Court of Appeals for the Fourth Circuit directed in *ESAB Group Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir.1997), that "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *Id.* at 623.

**2.** This letter does not appear in the file. The only demand letter present, attached to the complaint, is addressed to the Plaintiff in

## III. Discussion

### A. Specific Personal Jurisdiction

The Plaintiff asserts that specific personal jurisdiction exists over the Defendant under the Virginia Long Arm statute. Specifically invoking Va.Code § 8.01–328.1(A)(1), the Plaintiff argues that this suit arises from the Defendant's transaction of business in Virginia. In support thereof, the Plaintiff asserts that the Defendant:

1. Sold water distillers in Virginia;

2. Recalled water distillers from Virginia;

3. Sent a demand letter to the Plaintiff in Virginia;

4. Maintains a Virginia presence via Virginia distributors who advertise and sell West Bend products directly to the public; and,

5. The sale of products via the World Wide Web.

*See* Plaintiff's Reply at 6–7. Defendant argues that this action does not arise from these alleged indicia of transacting business.

The terms of the Virginia Code are clear: the statute's provisions may only be invoked "as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth." Va.Code § 8.01–328.1(A)(1). Therefore, the Court must ascertain initially whether the underlying action arises from the transactions identified by the Plaintiff in support of the exercise of jurisdiction. In review of the transactions offered, the Court finds only three of the five to be even closely related to the pending Declaratory Judgment Act complaint: the apparent Virginia sales, the recall notices and a demand letter to the Plaintiff directed to the Plaintiff in Virginia.[2] The remaining factors cited are not relevant to specific jurisdiction analysis, as

Hong Kong. Plaintiff has not offered any argument on this claim and did not support it at oral argument.

they are not related to the Plaintiff's lawsuit.

■ In the United States Court of Appeals for the Fourth Circuit's statement in *City of Virginia Beach v. Roanoke River Basin Assoc.*, 776 F.2d 484 (4th Cir.1985), the appellate court interpreted Va.Code § 8.01–328.1. "In order for a cause of action to arise from business transacted in Virginia, the activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiff's substantive claim." *Id.* at 487. This Court in *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582 (E.D.Va.1992), also held that "arising from" is given the plain meaning of "caused by." *Id.* at 589.

A year earlier, this Court construed the "arising under" portion of the Virginia long-arm statute also in *Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 941 (E.D.Va.1991), a case where a plaintiff attempted suit against an Atlantic City, New Jersey casino company with jurisdiction premised upon the casino's advertising and solicitation in the Commonwealth. The Court first looked at the plain meaning of the statute, concluding that "it is evident that Virginia's General Assembly used the phrase 'arising under' to require that there be a causal link between the acts relied on for personal jurisdiction and the cause of action asserted." *Id.* at 943. This linkage goes beyond "but for" causation, but instead approximates legal or proximate causation. *Id.* In *Chedid*, this Court rejected the plaintiff's assertion of a but-for causation argument (she would never have slipped and fallen at the casino but-for the solicitation to visit).

■ The Plaintiff seeks this Court's ruling as to its liability to the Defendant for allegedly faulty motors and the resultant costs of their repair and replacement. The underlying complaint in this action asks this Court to:

[E]nter a judgment pursuant to 28 U.S.C. § 2201(a) declaring that [the Plaintiff] is not liable to reimburse West Bend for any costs associated with the repair and replacement of the West Bend Water Distiller Models 10120 and 10240, for any other costs associated or to be associated with the recall of such products in either the United States or abroad, or for any costs associated with payment by West Bend for property damage caused by failed Water Distiller units.

Complaint at 5. This claim is cognizable notwithstanding any of the cited Virginia activities.

Assuming some sale of distillers in Virginia, the Court concludes this does not meet the "arising from" standard required by the Virginia long-arm statute. The Declaratory Judgment Act claim by the Plaintiff exists independently of the sales in Virginia, thus the sales can form no basis for this Court to assert jurisdiction. The Court additionally is doubtful that due process would be satisfied where the record indicates the Virginia sales occurred after the release of goods into the stream of commerce and without any purposeful action by the Defendant to direct the goods into Virginia.

Clearly notices of recall were sent into Virginia for the water distillers.[3] The Plaintiff contends this evidences the transaction of business from which this suit arises. However, in the present case, the underlying complaint seeks to forestall Plaintiff's liability to the Defendant. Similar to the analysis of the presumed sales, the Court finds that the addressing of recall notices into Virginia is unrelated to the actual claim Plaintiff made in its complaint. The Court additionally has significant doubts that due process supports the assertion of specific personal jurisdiction upon such an attenuated relationship be-

**3.** The Defendant states that the number of recall notices sent to Virginia, 270, represents

1% of the 21,840 notices sent nationwide.

tween the recall notices and the declaratory judgment sought.

The mailing of recall notices and the pending complaint are unrelated; absent the sales in Virginia, the Plaintiff could still seek a declaratory judgment from the proper court. A different situation would be presented where a Virginia water distiller purchaser sought to assert jurisdiction over West Bend, a scenario Plaintiff posited at oral argument. However, the present Plaintiff does not stand in those shoes. Accordingly, the Plaintiff cannot rely upon the Virginia long-arm statute to assert specific personal jurisdiction.

This result is supported by this Court's decision in *Coastal Video Communications, Corp. v. The Staywell Corp.*, 59 F.Supp.2d 562 (E.D.Va.1999). In that case, a plaintiff sought a declaratory judgment as to its liability for copyright infringement. The *Coastal Video Communications* plaintiff asserted that this Court had specific personal jurisdiction because of purported sales of the allegedly offending publication in Virginia. This Court rejected that argument, noting in *dicta* that even if it could be shown that the publication had been sold in Virginia, the cause of action itself did not arise from the sale. The Court acknowledged the declaratory judgment posture of the case and the lack of a counterclaim, concluding that this left the Court only to consider the copyright infringement claim of the purported infringer. The fact that this Court might have personal jurisdiction if the *Coastal Video Communications* defendant sued that plaintiff, did not confer jurisdiction on the Court where the positions were reversed by virtue of the declaratory judgment action—the scenario that actually developed. Key to this analysis was this Court's conclusion that "even if the [defendant] had no contact with Virginia, Coastal's declaratory judgment action ... would

still exist." *Id.* at 566. The same is true in the case at bar.

## B. General Personal Jurisdiction

■ The Plaintiff further argues that general personal jurisdiction exists over the Defendant. General personal jurisdiction exists where a Court may rely upon the Defendant's actions, although not the basis of the instant action, to conclude that the Defendant may properly be brought to this Court. The Plaintiff argues that the Defendant possesses extensive contacts with Virginia, sufficient to satisfy the demands of due process and for this Court to assert jurisdiction over the Defendant. The Plaintiff relies upon essentially the same factual background already explored to support the assertion of general jurisdiction. "In determining whether there exists general jurisdiction over a non-resident defendant, a court must examine not only the quantity, but also the nature, of the defendant's forum-affiliating contacts." *Verosol, B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 591 (E.D.Va.1992).

The Plaintiff cites *Mieczkowski v. Masco Co.*, 997 F.Supp. 782 (E.D.Tex.1998), to support this general jurisdiction argument. In *Mieczkowski*, the district court aggregated an Internet web site with traditional business contacts with the forum state to arrive at general jurisdiction over that defendant. It is apparent that West Bend's web site is an intermediate level interactive webpage. That is undisputable given the ability of visitors to make purchases, albeit not of the disputed water distillers. *See Roche v. Worldwide Media, Inc.*, No. 99–1534–A, 90 F.Supp.2d 714, 716–719 (E.D.Va.2000) (discussing the sliding scale rating for Internet advertisements in personal jurisdiction analysis). Furthermore, Defendant essentially concedes that overall, some portion of the Defendant's business is derived from Virginia.[4]

4. Defendant's total sales, Virginia sales, and percentage of Virginia sales for 1997–99 are:
1997 $224,326,428, $3,934,768 (VA), 1.75%

1998 $196,710,829, $3,236,526 (VA), 1.65%
1999 $173,146,528, $3,739,989 (VA), 2.16%
*See* Reckner Affidavit at ¶ 5 (Mar. 7, 2000).

Here, the Defendant's aggregate Virginia sales for the past three years exceeds three million dollars, approaching four million dollars in 1997 and 1999. Although a relatively small percentage of the overall sales of the corporation, it is difficult to conclude the sales are *de minimus.* Clearly, the Defendant receives a financial reward from its associations with Virginia. It might be argued that this meets the requirement of a "persistent course of systematic and substantial business activities" upon which this Court could assert general jurisdiction. *See Witt v. Reynolds Metals Co.,* 240 Va. 452, 455, 397 S.E.2d 873 (1990).

However, in *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195 (4th Cir.1993), the United States Court of Appeals for the Fourth Circuit rejected the use of general jurisdiction to bring a defendant to court in Maryland. There, the defendant maintained a sales force in Maryland, attended conferences there, enjoyed sales between nine and thirteen million dollars annually over a period of six years, and the sales constituted approximately two percent of the total sales. The appellate court rejected the maintenance of a sales force as supporting general jurisdiction, *see id.* at 1200 (citing cases for the proposition that maintenance of a substantial sales force is insufficient for general jurisdiction), and then concluded the remaining factors to be insufficient as a whole. *Id.* The Court finds the logic of *Nichols* instructive and compelling in this case.

Moreover, despite the relative novelty of Internet jurisdiction, in the end the presence of this type of a World Wide Web page is akin to advertising, the same as if a television advertisement had been broadcast on a national signal, inviting consumers to call into the company. Given that West Bend is not primarily an Internet based company and a lack of significant Virginia contacts with the Internet site, the Court is unwilling to accord undue weight to the fact of an Internet presence by the Defendant. In *Nichols,* the appellate court noted that advertising and solicitation activities alone do not constitute "minimum contacts" required for general jurisdiction. *Id.* at 1199.

Thus the Court concludes no basis exists for general jurisdiction consistent with the demands of due process. The Court further concludes discovery is inappropriate in these circumstances where the jurisdictional arguments are so attenuated and the parties already conducted informal discovery in advance of the hearing.

## C. Choice of Law & Contractual Provisions/Motion to Transfer

Both parties identify in their pleadings contractual provisions they feel control. West Bend maintains that its choice of forum language contained in its purchase order sets venue for disputes in Wisconsin.[5] The Plaintiff notes that its sales confirmation contains a clause setting the governing law as Hong Kong.[6]

5. West Bend's purchase order states:
    13. **WISCONSIN CONTRACT AND JURISDICTION.** THIS PURCHASE ORDER WILL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF WISCONSIN, AND IT IS AGREED THAT THE SELLER WILL EXERCISE ANY RIGHT OR REMEDY HEREUNDER IN, AND HEREBY CONSENTS TO THE JURISDICTION OF, THE STATE OF WISCONSIN, COURTS OF WASHINGTON COUNTY, WISCONSIN, OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN LOCATED IN MILWAUKEE, WISCONSIN.

West Bend Purchase Order ¶ 13 (Feb. 6, 1997) & West Bend Purchase Order ¶ 13 (July 22, 1998).

6. Chiaphua Components Limited's sales confirmation states:

    13. **Applicable Law**
    This Agreement shall be deemed to have been entered into in Hong Kong and shall be governed and construed by the laws of Hong Kong. Buyer hereby submits to the non-exclusive jurisdiction of the courts of Hong Kong.

Chiaphua Components Limited Sales Confirmation at ¶ 13 (Mar. 27, 1997).

The Court does not resolve this battle of the forms as the analysis ultimately has no bearing on the determination of this Court's ability to assert jurisdiction over the Defendant. Such jurisdiction does not exist.

The provision may, however, influence whether this Court transfers this matter to a proper venue. The Defendant asks that this matter be dismissed outright, while the Plaintiff seeks transfer to Wisconsin. *See* 28 U.S.C. § 1406(b).[7] In *Nichols v. G.D. Searle & Co.* the appellate court concluded that a District Court's decision to dismiss a case, rather than allow amendment and transfer, is a decision committed to the discretion of the trial court. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201–02 (4th Cir.1993).

Having examined the weight of the case law available in application of Virginia Code § 8.01–328.1, the Court concludes that transfer is not in the interest of justice. In light of the case law and the limited factual underpinnings offered to the Court as justification for bringing suit in the Eastern District of Virginia, justice was not served as this clearly is an inappropriate venue. Moreover, given the costs to other party and the attendant burden on the court system from ill-supported venue decisions, choice of venue is not a decision to be made lightly by litigants. No convincing reason is presented to the Court why this choice by the Plaintiff, through counsel, should be overlooked. Plaintiff was well aware of venue in Wisconsin, having engaged the Defendant in litigation there, as well as the forum of Hong Kong. Accordingly, the Court declines to exercise its discretion to transfer this case to the Eastern District of Wisconsin.

### IV. Conclusion

Defendant's Motion to Dismiss is hereby **GRANTED**. Plaintiff's requests for transfer and for discovery are **DENIED**.

7. Plaintiff points the Court's attention to 28 U.S.C. § 1400(b), but this provision in inapplicable. The Court believes this to be a

The Clerk of the Court is **REQUESTED** to provide copies of this Memorandum Opinion and Order to the counsel of record.

**IT IS SO ORDERED.**

typographical error and will focus upon 28 U.S.C. 1406(b), permitting transfer upon motion at the discretion of the Court.