# CIRCUIT COURT OF FAIRFAX COUNTY

Massey Energy Co. et al.

v.

United Mine Workers of Am. et al.

October 4, 2005

Case No. (Law) 2005-3632

By Judge Randy I. Bellows

This matter is before the Court on Defendant West Virginia Consumers for Justice and Defendant Kenneth Perdue's motion to dismiss for lack of personal jurisdiction. The parties submitted briefs prior to the September 22, 2005, hearing. At the conclusion of oral argument, the Court took the matter under advisement.

The Court has considered the briefs submitted, as well as the oral arguments, and finds that it does have in personam jurisdiction over Defendants West Virginia Consumers for Justice and Kenneth Perdue.

## I. Factual and Procedural Background

Plaintiffs, Massey Energy Co. ("Massey") and its chairman, chief executive officer, and president Don Blankenship, operate mines in Virginia, West Virginia, and Kentucky. Plaintiff Massey is a Delaware corporation with its principal place of business in Richmond, Virginia. Plaintiff Blankenship is a West Virginia resident.

Plaintiffs allege that Defendants conspired to defame and defamed Plaintiffs with the purpose of injuring them in their trade, business, and profession. Plaintiffs allege that this was done via a defamatory television advertisement broadcast into West Virginia and Virginia, a defamatory press release, and subsequently published articles containing that press release. The substance of the defamatory statements is that Plaintiffs were responsible for contaminating West Virginia drinking water and unfairly terminating the employment and benefits of West Virginia miners.

Plaintiffs brought this action against the union that issued the press release, United Mine Workers of America ("UMWA"), the president of the UMWA, Cecil Roberts, the "527" political organization that produced and paid for the television advertisement, West Virginia Consumer's for Justice ("WVCJ"), WVCJ's chairman, Kenneth Perdue, and the newspaper that included contents of the press release in an article, The Daily Gazette Company, Inc., doing business as The Charleston Gazette ("Gazette"), and Charleston Newspapers, Ltd., doing business as The Charleston Gazette ("Gazette"). Although Plaintiffs allege that the television station that broadcast the advertisements ("WVNS Channel 59") was part of the conspiracy, Plaintiffs did not name it as a party.

Defendants WVCJ and Perdue moved the Court to dismiss for lack of personal jurisdiction on July 19, 2005. Plaintiffs appeared before the Court on August 26, 2005, and were granted leave to file an amended motion for judgment, discussed below. Plaintiffs filed an amended motion for judgment on September 9, 2005, and then filed an opposition to the motion to dismiss on September 12, 2005. Defendants filed a reply memorandum on September 16, 2005. In this reply, Defendants responded to the new jurisdictional claims contained in the amended motion for judgment while arguing that the amended motion for judgment was not properly before the Court. This Court heard oral argument on September 22, 2005.

*II. The Filing of the Amended Motion for Judgment*

In accordance with Rule 1:8, on August 26, 2005, Judge Smith issued an Order of this Court providing that "Plaintiffs shall have twenty-one days in which to file an amended motion for judgment." Rule 1:8 provides that "leave to amend shall be liberally granted in furtherance of the ends of justice."

Plaintiffs assert and Defendants do not dispute that Plaintiffs attempted to file its amended motion for judgment on September 9, 2005. However, the parties disagree as to whether the August 26, 2005, Order granted Plaintiffs' leave to amend as to Defendants WVCJ and Perdue.

This Court "speaks through its orders and we presume that the orders accurately reflect what transpired." *Waterfront Marine Constr. v. North End 49ers Sandbridge Bulkhead Groups A, B, & C,* 251 Va. 417, 427 (1996) (*citing Stamper v. Commonwealth,* 220 Va. 260, 280-81 (1979), cert. denied, 445 U.S. 972 (1980)). The August 26, 2005, Order clearly granted Plaintiffs leave to file an amended motion for judgment without limitation. Further, Defendants UMWA and Roberts adequately responded to the contents of the amended motion for judgment belying any claim of prejudice.

Accordingly, Plaintiffs' amended motion for judgment will be considered as timely filed for purposes of analyzing Defendants' motion to dismiss.

*III. Discussion*

A. *Standard of Review; Personal Jurisdiction*

While Plaintiffs ultimately bear the burden of proving this Court has personal jurisdiction over each Defendant by a preponderance of the evidence, on a motion to dismiss Plaintiffs need only establish a prima facie case of personal jurisdiction. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 80 (1936); *Rannoch, Inc. v. The Rannoch Corp.,* 52 F. Supp. 2d 681, 684 (E.D. Va. 1999). The question "is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by the preponderance of the evidence." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).

This Court must draw all reasonable inferences and resolve all factual disputes in Plaintiff's favor. *Eastern Tech. Enters., Inc. v. Wilson & Hayes, Inc.,* 46 Va. Cir. 558, 560 (1997) (*citing Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993)). Where, as here, Defendants submit affidavits denying allegations specifically pertaining to jurisdiction, "the court should not weigh the controverting assertions of the party seeking dismissal because to do so would

allow defendants to `avoid personal jurisdiction simply by filing an affidavit denying all jurisdictional facts'." *Verizon Online Servs. v. Ralsky*, 203 F. Supp. 2d 601, 609 (E.D. Va. 2002) (*quoting CompuServe*, 89 F.3d 1257, 1262 ("Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff[] alleges collectively fail to state a prima facie case for jurisdiction."))); *see also Professional Investors Life Ins. Co. v. Roussel*, 445 F. Supp. 687, 692 (D. Kan. 1978) (an affidavit containing "bald denials of the pleaded facts will not sustain a jurisdictional challenge"). Rather, where the parties' allegations are contradictory, those related in Plaintiff's complaint will be accepted as true. *See Orangeburg Pecan Co. v. Farmers Inv. Co.*, 869 F. Supp. 351, 353 (D. S.C. 1994); *Wolf v. Richmond City Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984).

The determination of whether personal jurisdiction exists over a nonresident defendant is a two step inquiry. "The first step in analyzing the exercise of personal jurisdiction is to determine whether Virginia's long-arm statute reaches the non-resident defendant given the cause of action alleged and the nature of the defendant's Virginia contacts." *De Santis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 422-23 (E.D. Va. 1996) (citations omitted). The second step is to ensure that the exercise of in personam jurisdiction over a non-resident defendant complies with the "due process requirements of the Fourteenth Amendment to the United States Constitution." *Witt v. Reynolds Metals Co.*, 240 Va. 452, 454 (1990).

While there are two steps, "because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause . . . the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quotations omitted). "The question, then, is whether the defendant has sufficient minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id. (quoting International Shoe Co.*, 326 U.S. at 316); *Glumina Bank v. D. C. Diamond Corp.*, 259 Va. 312, 318 (2000).

The key factor in this inquiry is that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Accordingly, this Court must conduct a tripartite inquiry. First, did Defendants "purposefully avail" themselves of the privilege of conducting activities within Virginia? Second, did the alleged defamation arise from Defendants' alleged contacts with the Commonwealth? *See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Third, did Defendants'

acts, or the consequences of those acts, "have a substantial enough connection with Virginia to render the exercise of jurisdiction over Defendants `constitutionally reasonable'?" *Verizon Online Servs.*, 203 F. Supp. 2d at 611 (*quoting Christian Science Bd.*, 259 F.3d at 215).

## B. *Personal Jurisdiction under Virginia's Long-Arm Statute*

Plaintiffs allege jurisdiction pursuant to subsections (A)(1), (3), and (4) of Virginia's long-arm statute. Va. Code Ann. § 8.01-328.1. These provisions provide that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
> 1. Transacting any business in this Commonwealth. . . .
> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

*Id.*

When the long-arm statute is the sole basis for jurisdiction, the cause of action must arise from the acts alleged. Va. Code § 8.01-328(C).

### 1. *Jurisdiction Pursuant to § 8.01-328.1(A)(1)*

Plaintiffs assert that jurisdiction is proper over Defendants WVCJ and Perdue pursuant to § 8.01-328.1(A)(1) because Defendants derived substantial revenue from Virginia and engaged in a persistent course of conduct in Virginia. In determining jurisdiction, each Defendant's individual contacts with the forum must be assessed individually. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n. 13 (1984) (holding that one acting in an official capacity will neither be shielded from, nor exposed to, suit merely because of such actions).

Specifically, Plaintiffs allege that Defendant WVCJ "transacted business" in Virginia by "obtaining" donations from a Virginia organization, the UMWA, and by producing and broadcasting advertisements into Virginia via the West Virginia television station. Plaintiffs further allege that these donations were

used, in part, to purchase the air time in which the defamatory advertisements were broadcast into the Commonwealth. Next, Plaintiffs allege that all of the Defendants conspired, including Virginia resident UMWA, to defame Plaintiffs because Massey did not employ union labor. Defendant UMWA's headquarters are located at 8315 Lee Highway, Fairfax, Virginia 22031. Last, Plaintiffs allege that Perdue personally directed WVCJ's activities, "caused tortious injuries to the Plaintiffs in Virginia, does business in Virginia, and engaged in a personal course of conduct in Virginia by directing WVCJ's activities, including obtaining donations from and broadcasting defamatory advertisements into Virginia." A.M.J. at & 9. Additionally, Plaintiffs allege that Defendant Perdue has a close relationship with Virginia resident UMWA as head of West Virginia's AFL-CIO.

Defendants respond to these allegations contending that they did not "expressly aim [the] advertisement at Virginia and did not expect its effects to be felt there." Defendants further argue that the alleged donations are insufficient to confer jurisdiction because Virginia law requires that a non-resident Defendant actually physically enter the Commonwealth and engage in a business activity. Last, Defendants deny the existence or any participation in a conspiracy to defame Plaintiffs.

Contrary to Defendants assertions, "[a] defendant need not ever physically enter Virginia in connection with the disputed transaction. . . ." *Mason v. Shirk & Shirk*, 32 Va. Cir. 193, 195 (1993). As the Supreme Court of the United States explained in *Burger King Corp. v. Rudzewicz*:

> Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum state. . . . It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

471 U.S. 462, 476 (1985) (citations omitted).

Whether Defendants WVCJ and Perdue expressly aimed the advertisement at Virginia and whether Defendants individually engaged in a persistent course of conduct in Virginia are largely factual inquiries. This inquiry "bristles with factual controversy . . . but the adjudication of factual disputes is

not the present task of the court." *Designs 88, Ltd. P'ship v. Power Uptik Prods., L.L.C.*, 133 F. Supp. 2d 873, 875 (W.D. Va. 2001). Rather, "the court must draw all reasonable inferences, and resolve all factual disputes in favor of the non-moving party." *Id. (citing Mylan Laboratories, Inc.*, 2 F.3d at 60). At this stage, "plaintiff need not prove the entire case but only make a 'prima facie' showing of the conspiracy." *North Fork Shenandoah, Inc. v. Bunning*, 7 Va. Cir. 327, 331 (1986). Once this prima facie showing of conspiracy is adequately alleged, and where "co-conspirators have sufficient contacts with the forum, so that due process would not be violated," these contacts are imputed against the foreign co-conspirator. *Siu Ming Hong v. Chum Moon Tong*, 61 Va. Cir. 439, 441 (2003) (*quoting Verizon Online Services v. Ralsky*, 203 F. Supp. 2d 601, 622 (E.D. Va. 2002)).

This Court is of the opinion that Plaintiffs have sufficiently made a prima facie case of personal jurisdiction pursuant to § 8.01-328.1(A)(1) as to Defendants WVCJ and Perdue individually. Additionally, Plaintiffs have made a sufficient prima facie showing of conspiracy among Defendants WVCJ and Perdue with Virginia resident UMWA giving rise to personal jurisdiction on this basis as well.

The second step of the jurisdictional inquiry is whether exercising jurisdiction based on these contacts satisfies the "due process requirements of the Fourteenth Amendment to the United States Constitution." *Witt v. Reynolds Metals Co.*, 240 Va. 452, 454 (1990).

Defendants argue that its contacts are "at best, sporadic" and insufficient to satisfy Due Process. While this Court observes that the alleged contacts between Defendants WVCJ and Perdue and this jurisdiction are limited in nature, they are sufficient to survive this jurisdictional challenge. Furthermore, these minimum contacts are buttressed by allegations of a conspiracy with a Virginia resident.

Accordingly, this Court is of the opinion that Plaintiff has sufficiently made a prima facie case of personal jurisdiction pursuant to § 8.01-328.1(A)(1) as to Defendants WVCJ and Perdue and has satisfied the constitutional requirements of Due Process.

*2. Jurisdiction Pursuant to § 8.01-328.1(A)(3)*

Plaintiffs next assert that jurisdiction is proper pursuant to § 8.01-328.1(A)(3) because Plaintiffs published a defamatory statement within Virginia via a television advertisement broadcast from West Virginia into Virginia.

"Under Virginia law, the necessary elements of the tort of defamation are (1) publication about the plaintiff, (2) an actionable statement, and (3) the

requisite intent." *Fleming v. Moore*, 221 Va. 884 (1981); *Chapin v. Greve*, 787 F. Supp. 557, 562 (E.D. Va. 1992) (*citing* Michie's Jurisprudence, *Libel & Slander*, § 12).

Publication is a required element of the tort of defamation, and the injury from this tort occurs where the defamatory statement is published. *See Bochan v. La Fontaine*, 68 F. Supp. 2d 692, 698 (1999); *Telco Communications v. An Apple a Day*, 977 F. Supp. 404, 408 (E.D. Va. 1997). While this advertisement was broadcast in West Virginia to primarily a West Virginia audience, Defendants concede that it reached homes within the Commonwealth. That the advertisement was broadcast into Virginia is alone a sufficient basis of jurisdiction under the statute. See *Digital Equip. Corp. v. Alta Vista Tech.*, 1997 U.S. Dist. LEXIS 3457, n. 20 (D. Mass. 1997) ("Numerous courts have held that jurisdiction can be based on the broadcasting of a television program (or advertising) into the forum state, when the cause of action arises, as it does here, from the broadcast itself," insofar as broadcast is analogous to the maintenance of a Web-site accessible in a given state). *See, e.g., Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, Ltd. Partnership*, 34 F.3d 410, 412 (7th Cir. 1994) (holding television broadcast into Indiana supports personal jurisdiction over defendant there); *Holmes v. TV-3*, 141 F.R.D. 692, 696 (W.D. La. 1991) (same); *Viacom Int'l, Inc. v. Three Star Telecast, Inc.*, 639 F. Supp. 1277, 1280 (D. P.R. 1986) (same); *Thomas Jackson Publishing, Inc. v. Buckner*, 625 F. Supp. 1044, 1046 (D. Neb. 1985) (same); *Tonka Corp. v. TMS Entertainment, Inc.*, 638 F. Supp. 386, 390-91 (D. Minn. 1985) (same); *United Medical Laboratories, Inc. v. CBS, Inc.*, 256 F. Supp. 570, 572 (D. Ore. 1966) (holding Walter Cronkite, producer of a television news program, subject to personal jurisdiction based on the broadcast of the program into Oregon)."). *Contra Dagesse v. Plant Hotel, N.V.*, 2000 DNH 9 (D. N.H. 2000) (holding that television advertisements did not constitute continuous and systematic contacts).

Proceeding to the next step of the jurisdictional analysis, whether exercising jurisdiction satisfies Due Process, this Court is guided by *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir. 1997). There, the court explained that, "although the place that the plaintiff feels the alleged injury is plainly relevant to the jurisdictional inquiry, it must ultimately be accompanied by the defendant's own sufficient minimum contacts with the state if jurisdiction . . . is to be upheld." *Id.* Moreover, the specific statements must be analyzed to "determine whether they were [published] with the intent to target a Virginia audience." *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002).

Defendants WVCJ and Perdue contend that they have not purposefully availed themselves of the laws and privileges of Virginia. Specifically, they assert that they purchased advertising on a West Virginia television station with the sole purpose of reaching West Virginian viewers in an effort to influence the West Virginia election. Defendants characterize the fact that the television signal entered Virginia as coincidental and *de minimis* and certainly not purposeful conduct directed at the Commonwealth.

To the contrary, Plaintiffs argue that Defendants undoubtedly knew that the television and print advertisements would reach Virginia homes. Therefore, it was foreseeable that these defamatory messages would be published or republished within Virginia. As such, Defendants must have reasonably expected to be haled into a Virginia court. The Court recognizes that the parties dispute the exact number of household reached by the television advertisements. Plaintiffs allege that as many as 18,000 Virginia households were reached by the television stations' signal. Tr. of Sept. 22, 2005, Hr'g, at p. 17. Defendants contend that the number is closer to 1,980 households. Tr. of Sept. 22, 2005, Hr'g at, p. 9. Either way, this contact is not *de minimis*.

Essentially, Plaintiffs rely on the rationale explained in *Calder v. Jones*, 465 U.S. 783 (1984) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984). In *Calder*, the Supreme Court held that Defendants who published a defamatory statement in a foreign jurisdiction should "anticipate being haled into court" in that foreign jurisdiction to "answer for the truth of their statements." 465 U.S. at 789-90. Similarly, in *Keeton*, the Supreme Court held that "there is no unfairness in calling [defendant] to answer for the contents of [a] publication wherever a substantial number of copies are regularly sold and distributed." 465 U.S. 781.

This Court expressed a similar rationale in *Malcolm v. Esposito*, holding that, where a Defendant "consciously decided to transmit advertising information" outside of the jurisdiction, he "must have been able to foresee the possibility of being haled into court" outside of its own state. *Malcolm v. Esposito*, 63 Va. Cir. 440, 446 (2003) (per McWeeny, J.).

Here, Defendants are alleged to have caused a defamatory advertisement to be broadcast into the Commonwealth via a television station that regularly broadcast into the Commonwealth. Defendants must have foreseen the possibility that they would be haled into a Virginia court. This Commonwealth clearly possesses the "power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any claim in tort arising from the act." *Verizon Online Servs.*, 203 F. Supp. 2d at 617 (*citing* Restatement (Second) of Conflict of Laws § 36(1) (1988)). Moreover, the

Commonwealth has a vital interest in providing a forum to those aggrieved by alleged tortfeasors. *See Idefense, Inc. v. Dick Tracy Group*, 58 Va. Cir. 138, 143 (2002).

Accordingly, this Court is of the opinion that Plaintiff has sufficiently made a prima facie case of personal jurisdiction pursuant to § 8.01-328.1(A)(3) as to Defendants WVCJ and Perdue and has satisfied the constitutional requirements of Due Process.

### 3. *Jurisdiction Pursuant to § 8.01-328.1(A)(4)*

Plaintiffs next assert that jurisdiction is proper pursuant to § 8.01-328.1(A)(4). Section 8.01-328.1(A)(4) provides for jurisdiction where a Defendant causes "tortious injury in this Commonwealth by an act or omission outside this Commonwealth." *Id.* To allege jurisdiction under this provision, Plaintiffs must first allege that Defendants caused a tort in Virginia by an act in West Virginia. Plaintiffs have clearly alleged that Defendants caused the tort of defamation to occur within Virginia by purchasing and producing the advertisement in West Virginia.

Next, Plaintiffs must allege that Defendants either: (1) regularly conducted or solicited business; (2) engaged in any other persistent course of conduct; or (3) derived substantial revenue from goods used or consumed or services rendered in Virginia.

Defendants argue that Plaintiffs have failed to adequately allege that Defendants: (1) regularly conducted or solicited business in Virginia; (2) engaged in any other persistent course of conduct in Virginia; or (3) derived substantial revenue from goods used or consumed or services rendered in Virginia. Specifically, Defendants claim that Plaintiffs are using circular reasoning attempting to show a persistent course of conduct and regular business by relying on the very advertisements at issue.

The statutory language of § 8.01-328.1(A)(4) requires that the Defendant be "engaged in any *other* persistent course of conduct in Virginia" (emphasis added). The plain language of the word "other" requires a "persistent course of conduct which is separate and distinct from the tortious actions that form the basis of the cause of action." *Reiner v. Lee*, 1994 WL 1031245 (Va. Cir. Ct.) (per Wooldridge, J.). Plaintiffs have failed to allege such a persistent course of conduct as to Defendant WVCJ. In contrast, Plaintiffs have alleged that Defendant Perdue "derives sufficient revenue" from "services he provided to Defendants UMWA and Roberts" and that Defendant Perdue has engaged in a persistent course of conduct because he "maintains strong ties" to Defendants UMWA and Roberts in Virginia. A.M.J. at & 10.

Plaintiffs have also advanced a "conspiracy theory" of personal jurisdiction among all of the Defendants. Plaintiffs assert that jurisdiction is proper based upon the Virginia contacts and connections of WVCJ's co-conspirators, specifically Defendants UMWA and Roberts. *Siu Ming Hong v. Chum Moon Tong*, 61 Va. Cir. 439, 441 (2003); *Verizon Online Services v. Ralsky*, 203 F. Supp. 2d 601, 622 (E.D. Va. 2002).

This Court is persuaded that Plaintiffs have sufficiently made a prima facie case of personal jurisdiction pursuant to § 8.01-328(A)(4) as to Defendants WVCJ and Perdue and have satisfied the constitutional requirements of Due Process.

## IV. Conclusion

Defendants WVCJ and Perdue's contacts with the Commonwealth satisfy due process and the Virginia Long-Arm statute such that the exercise of long-arm jurisdiction is constitutionally permissible. This Court finds that it does have in personam jurisdiction over Defendants WVCJ and Perdue. Accordingly, Defendants' motion to dismiss is denied.